United States District Court
Southern District of Texas

**ENTERED**

February 06, 2017

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| REAGAN JAMES CALDWELL, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:16-CV-456 |
| | § | |
| COREY FURR, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## TO RETAIN RETAIN CERTAIN CLAIMS AND TO DISMISS OTHERS

This is a civil rights action filed by a state prisoner pursuant to 42 U.S.C. § 1983. Under the Prison Litigation Reform Act[1] any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. Plaintiff's action is subject to screening regardless of whether he prepays the entire filing fee or proceeds as a pauper. *Ruiz v. United States*, 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam). Plaintiff's *pro se* complaint must be read indulgently, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, it is respectfully recommended that Plaintiff's claims be dismissed in part and retained in part.

---

[1] Pub. L. No. 104-134, 110 Stat. 1321 (1996) ("PLRA").

# I.  JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

# II.  FACTUAL ALLEGATIONS

Plaintiff is an inmate in the Texas Department of Criminal Justice, Criminal Institutions Division ("TDCJ-CID") at the Telford Unit in New Boston, Texas.  He filed this civil rights action on October 21, 2016.  An evidentiary hearing was held on December 13, 2016.  At the close of the hearing, Plaintiff was given three weeks to file any additional information to support his claims.  On January 25, 2017, the Clerk received Plaintiff's Amended Complaint.  D.E. 11.[2]  Plaintiff seeks money damages.  The following allegations were made in Plaintiff's Amended Complaint (*Id*.), Plaintiff's Original Complaint (D.E. 1), or at the evidentiary hearing:

On July 7, 2016, Plaintiff had a disciplinary hearing.  After the hearing he was escorted back to his cell by correctional officers Fernando Martinez, Jr. and Derek Garza.  Before reaching his cell, the officers body-slammed him into a wall.

Plaintiff was housed in administrative segregation at the McConnell Unit in Beeville, Texas.  Plaintiff alleged that he has trouble walking due to a long ago hip surgery that left him with permanent walking difficulties.  While escorting him, officers, Garza and Martinez "aggressively pull[ed] his body in two opposite directions."  Plaintiff

---

[2] Although an amended pleading replaces the preceding pleading in its entirety, Plaintiff's pleading reads as a supplemental pleading (Fed. R. Civ. P. 15(d)) and augments his Original Complaint.  The Amended Complaint adds to Plaintiff's claims against Warden Corey Furr and Major McKee, but does not mention the remaining defendants. *See* D.E. 11.

stopped walking, questioned the officers regarding policy and procedures, and advised them of his right hip surgery and his difficulty walking.  Both officers became "very hostile and angry, forcing me against my will to walk."  When they reached 12F Pod, both officers "aggressively pushed [Plaintiff] inside [the] entrance space and body slammed [him] into a concrete wall and down onto a concrete floor with excessive use of force . . ."  Plaintiff claims he was compressed on the floor by Officer Garza.  Garza then "grabbed [Plaintiff's] penis/genitals with [Garza's] hand in a vise gripping manner, while twisting [Plaintiff's] genital organs in excessive force, sexually assaulting [Plaintiff]."  Martinez laughed and stated:  "Fight for your gay rights."  As a result of the assault, Plaintiff had a large knot on his forehead; his lips were split on the inside of his mouth; his neck was injured; the assault aggravated his pre-existing lower back and right hip injuries, and he had injuries to his penis and genitals.

After the assault, Lieutenant Cheryl Perales came to the unit, but did not allow Plaintiff to go to medical to be treated.  Other officers helped Plaintiff get up and got him a walker to use to get to his cell.

After the assault, Felisha-Ana Antu, an LVN, saw Plaintiff cell-side.  Antu told the guard that Plaintiff needed to be seen in medical.

The day after the assault, Plaintiff complained to correctional officer Jessica De Los Santos that he needed to go to medical due to the assault, but she denied his request.

Plaintiff claims that officers Garza and Martinez retaliated against him for allegedly throwing liquid onto a sergeant, which was the subject of the disciplinary hearing the day of the assault.  Plaintiff testified that his previous interactions with Garza

and Martinez were unremarkable.  Both of them were aware of his disability.  One of them had escorted him to use the disabled shower on an earlier occasion.

Plaintiff received a disciplinary case arising from the incident for his failure to obey an order and failure to walk.  That case was later dismissed.

Plaintiff attached his Step Two grievance to his Complaint.  In it he complained that Garza and Martinez used excessive force and caused his injuries.  He complained that LVN Felisha-Ana Antu observed his injuries cell-side, but failed to have him escorted to medical.  Correctional officer Jessica De Los Santos denied him medical treatment the day following the assault.  Plaintiff also complained that Major James McKee, Warden Corey Furr, and counsel substitute Adriana Cano were aware that his life was in danger and failed to protect him.

The response to his Step Two grievance on September 20, 2016, by C. Martinez states: "This issue has been reviewed by the Office of the Inspector General and that office has determined that there is insufficient evidence to warrant opening a case.  No further action will be taken."

### III. <u>DISCUSSION</u>

#### A. Legal Standard

Regardless of whether a plaintiff has properly exhausted his administrative remedies, his action may be dismissed for failure to state a claim upon which relief can be granted.  42 U.S.C. § 1997e(c)(2).  "To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person

acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Biliski v. Harborth*, 55 F.3d 160, 162 (5th Cir. 1995).  An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in support of his claim entitling him to relief.  *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002).  The complaint must be liberally construed in favor of the prisoner and the truth of all pleaded facts must be assumed. *Id*.

### B. Excessive Force

Plaintiff argues that officers Garza and Martinez used excessive force when they slammed him into a wall and down onto the concrete floor.  He described some visible injuries and some not readily apparent.

"When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson v. McMillan*, 503 U.S. 1, 9 (1992).  "This is true whether or not significant injury is evident.  Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id*.

Factors to be considered in determining whether the force used is excessive include:  1) the need for application of force, 2) the relationship between that need and the amount of force used, 3) the threat reasonably perceived by the responsible officials, and 4) any efforts made to temper the severity of a forceful response. *Kitchen v. Dallas Cty*, 759 F.3d 468, (2014) (reversing and remanding grant of summary judgment on excessive force claim).  Based upon the pleading and the evidentiary hearing testimony,

there is no indication that any force was necessary.  Plaintiff states cognizable claims for excessive force against Garza and Martinez.

### C. Cruel and Unusual Punishment

Plaintiff alleged that he was denied medical care for his injuries.  The Eighth Amendment prohibits cruel and unusual punishment.  U.S. Const. amend. VIII. "[A]lthough accidental or inadvertent failure to provide adequate medical care to a prisoner would not violate the Eighth Amendment, 'deliberate indifference to serious medical needs of prisoners' violates the Amendment because it constitutes the unnecessary and wanton infliction of pain contrary to contemporary standards of decency." *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  "[A] prison inmate can demonstrate an Eighth Amendment violation by showing that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Sama v. Hannigan*, 669 F.3d 585, 590 (5th Cir. 2012) (internal citation and quotation marks omitted).  The plaintiff must also show that the official knew of and disregarded an excessive risk to inmate health or safety.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Lt. Perales was present immediately after the assault on Plaintiff, but did not permit him to be taken to medical for examination even though he had a knot on his forehead and was bleeding from his mouth.  Perales was told that Plaintiff had been

assaulted, that he complained of multiple injuries, many not visible such as the injuries to his neck, back, hip and groin, but she disregarded the information and refused to allow him to be treated.  If Plaintiff's allegations are true, as the Court must presume they are, Perales disregarded an excessive risk to Plaintiff's health or safety.

Plaintiff claims that LVN Antu did not take him to medical and did not fully document his injuries.  However, Antu's recommendation to security officers that Plaintiff be taken to medical does not indicate deliberate indifference, but rather a concern that she could not adequately assess his injuries cell-side.  Accordingly, Plaintiff does not state an Eighth Amendment claim against Antu.

Plaintiff also alleges that Jessica De Los Santos denied him medical care the day after the assault.  He complained to De Los Santos that his lips were still bleeding into his mouth the day following the assault.  She allegedly responded that she did not care if he died in that cell.  At the time Plaintiff asked De Los Santos to allow him to go to medical, he still had a visible knot on his forehead, but none of his other injuries was visible.  Under these circumstances, Plaintiff has alleged that De Los Santos disregarded an excessive risk to inmate health or safety.  Accordingly, Plaintiff has stated a deliberate indifference claim as to De Los Santos.

### D.  Failure to Protect

Plaintiff alleged that multiple prison officials failed to protect him.   Prison officials have an Eighth Amendment duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  To establish a failure-to-protect claim, an inmate must show that he was "incarcerated under conditions posing

a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection." *Mitchell v. Williamson*, 193 Fed. App'x. 372, 373 (5th Cir. Aug. 10, 2006) (per curiam) (unpublished); *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995) (citing *Farmer*, 511 U.S. at 834).

"An official is deliberately indifferent when he 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Johnson v. Johnson*, 385 F.3d 503, 524 (5th Cir. 2004) (quoting *Farmer*, 511 U.S. at 834). Vague information that does not identify the persons from whom the prisoner has received threats does not suffice to put an official on notice of an excessive risk to an inmate. *See Armstrong v. Price*, 190 Fed. App'x. 350, 353 (5th Cir. June 28, 2006) (per curiam) (unpublished). When a prisoner does not report an actual threat, an official is unlikely to be deliberately indifferent to a substantial risk of serious harm. *See id*. (Armstrong "provide[d] the names of several officials and inmates who had either made or known about threats toward him, but his specific allegations against defendants Moore and Haskins were not sufficient to make clear that their failure to act in those circumstances subjected Armstrong to a substantial risk of serious harm.").

Caldwell testified that he told Warden Furr that Garza threatened to "get him," before Garza assaulted Caldwell. Furr was the warden for the administrative segregation unit to which Plaintiff was assigned. During the 18 months Caldwell was on the McConnell Unit before he was assaulted, Warden Furr visited Caldwell and asked Caldwell about illegal activities in the unit. Thereafter, Caldwell filed multiple "life in

danger" complaints due to his concern that other inmates and corrections officers were "out to get him" because he was an informant. Plaintiff alleged that he told Warden Furr at cell-side that Garza was "out to get him" before the excessive force incident on July 7, 2016. The basis of Plaintiff's concern about Garza came from Garza's statement to Plaintiff that Plaintiff should not have assaulted the sergeant—thrown liquid on him.

Plaintiff's Amended Complaint states that he notified Warden Furr on numerous occasions in person and through grievances that he was concerned for his safety. Caldwell alleged that Furr signed grievance forms relating to his "life in danger" complaints. Plaintiff alleged that he feared for his safety from "officers and gang-affiliated members of 'Crips' and 'Bloods.'" D.E. 11, p. 1.

Plaintiff also claims that Major James McKee, who was part of the classification unit, failed to protect him from injury. The day of the assault at the close of the disciplinary hearing, Plaintiff explained to McKee that he believed his life was in danger from other correctional officers and inmates. He did not name specific officers in his complaint. At some point, he asked for a transfer. After Plaintiff was assaulted, he was transferred to the Telford Unit.

Plaintiff has not alleged that he informed either Warden Furr or Major McKee of timely, specific information regarding his "life in danger" complaints. As a result, neither Warden Furr nor Major McKee had information of a substantial risk of serious harm to Plaintiff from Garza. *See e.g. Armstrong v. Price*, 190 Fed. App'x. 350, 353 (5th Cir. June 28, 2006) (per curiam) (unpublished).

Plaintiff also testified that Adriana Cano failed to protect him. Cano was his counsel substitute for disciplinary hearings in June and on the day of the assault. Plaintiff told her that Garza and others were out to get him and he feared for his life. She suggested that Plaintiff talk to security. After Plaintiff's meeting with Cano, on his way to his cell, Garza and Martinez allegedly assaulted him. Cano is not alleged to have the ability to protect Plaintiff, either by rejecting the assignment of Garza as his escort, or by transferring him. Her advice in response to Plaintiff's concerns was reasonable and does not suggest that she acted with deliberate indifference. *See Longoria v. Texas*, 473 F.3d 586, 594 (5th Cir. 2006). Responding to an inmate's complaints by referring the matter for further investigation or taking other administrative action fulfills an officer's protective duties under the Eighth Amendment. *Id*.

Plaintiff has not stated a claim that Warden Furr, Major McKee or counsel substitute Cano were deliberately indifferent to a substantial risk of injury from officers Garza or Martinez.

### E. Retaliation Claims

Plaintiff alleged retaliation by officers Garza and Martinez and by Warden Furr. "To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones v. Greninger*, 188 F.3d 322, 324–25 (5th Cir. 1999); *see also Hanna v. Maxwell*, 415 Fed. App'x. 533, 535 (5th Cir. Mar. 3, 2011) (per curiam) (unpublished); *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 1995) (per curiam). To establish intent to retaliate, a prisoner

10 / 13

may state a chronology of events from which the court can conclude retaliatory motive. *Hart*, 343 F.3d at 764.

### 1. *Garza and Martinez*

Plaintiff alleged that officers Garza and Martinez retaliated against him for throwing liquid onto their sergeant, which was the subject of the disciplinary hearing the day of the assault. Caldwell testified that his previous interactions with Garza and Martinez were unremarkable. Plaintiff fails to state a claim that that Garza and Martinez retaliated against him for exercising his constitutional rights—there is no right to assault a guard in prison. Because the retaliation Plaintiff complains of is not for exercise of a constitutional right, it is not cognizable as a retaliation claim under § 1983.

### 2. *Warden Furr*

Plaintiff newly alleged in his Amended Complaint that Warden Furr retaliated against him for Plaintiff's 1995 lawsuit by "knowingly, willingly, and intentionally placing and leaving Plaintiff in hostile environment/position when he was 'bodyslammed' in an excessive use of force incident on 07/07/16."

Plaintiff alleged that Warden Furr retaliated against him for complaining of Eighth Amendment violations, Furr committed an adverse act (leaving Plaintiff in a dangerous or hostile environment), but Plaintiff wholly failed to allege any chronology of events or other causal connection between the 22 year old lawsuit and Furr's failure to transfer Caldwell or to protect him from Garza. As a result, Caldwell has not stated a claim that Warden Furr retaliated against him by failing to protect him.

## IV. **RECOMMENDATION**

Plaintiff's Complaint and Amended Complaint do not state a cause of action pursuant to 42 U.S.C. § 1983 as to Warden Corey Furr, Major James McKee, Felisha-Ana Antu, or Adriana Cano; accordingly, service is not recommended against those defendants.  It is respectfully recommended that Plaintiff's Complaint and Amended Complaint be dismissed in part as to those defendants.  As to Corrections Officers Derek Garza and Fernando Martinez, Caldwell stated cognizable claims of excessive force.  Caldwell also stated a cognizable claim of deliberate indifference to his health and safety as to Lieutenant Cheryl Perales and Jessica De Los Santos.  Service is recommended as to defendants Garza, Martinez, Perales, and De Los Santos.

Respectfully submitted this 6th day of February, 2017.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).