United States District Court
Southern District of Texas
**ENTERED**
November 19, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| REAGAN JAMES CALDWELL, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:16-CV-456 |
| | § | |
| COREY FURR, *et al*, | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Reagan James Caldwell, proceeding *pro se* and *in forma pauperis*, has filed this prisoner civil rights complaint in which he asserts Eighth Amendment claims of excessive force and deliberate indifference. Defendants Derek Garza, Fernando Martinez, Jessica De Los Santos, and Cheryl Perales have filed a Motion for Summary Judgment, contending they are each entitled to qualified immunity as to Plaintiff's claims. (D.E. 42). For the reasons stated herein, it is respectfully recommended that their summary judgment motion be granted in part and denied in part.

## I.    JURISDICTION

The Court has federal question jurisdiction over this civil action pursuant to 28 U.S.C. § 1331.

## II.    PROCEDURAL BACKGROUND

Plaintiff is currently incarcerated at the Hughes Unit of the Texas Department of Criminal Justice, Criminal Institutions Division ("TDCJ") in Gatesville, Texas.

Plaintiff's allegations in this case arise in connection with his previous assignment to the McConnell Unit in Beeville, Texas.

On October 28, 2016, Plaintiff filed his Original Complaint, alleging claims of excessive force, deliberate indifference, failure to protect, and retaliation.  Plaintiff named the following McConnell Unit officials as defendants in their individual and official capacities: (1) Lieutenant Perales; (2) Officer Martinez; (3) Nurse Felisha-Ana Antu; (4) Officer De Los Santos; (5) Counsel Substitute Adriana L. Cano; (6) Officer Garza; (7) Assistant Warden Corey Furr; and (8) Major James A. McKee.  (D.E. 1, pp. 4-6).  Plaintiff seeks money damages.  (D.E. 1, p. 5).

On December 13, 2016, a *Spears*[1] hearing was conducted.  At the close of the hearing, Plaintiff was granted leave to file any additional information to support his claims.   On January 25, 2017, Plaintiff submitted a pleading entitled "Amended Complaint," in which he raised additional allegations related to his claims against Assistant Warden Furr and Major McKee.[2]  (D.E. 11).

On February 6, 2017, the undersigned issued a Memorandum and Recommendation (February 6, 2017 M&R), recommending that the Court: (1) retain Plaintiff's excessive force claims against Defendants Garza and Martinez; (2) retain Plaintiff's deliberate indifference claims against Defendants Perales and De Los Santos; and (3) dismiss all of Plaintiff's remaining claims against all other defendants for failure

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

[2] Although an amended pleading replaces the preceding pleading in its entirety, Plaintiff's "Amended Complaint" reads as a supplemental pleading under Fed. R. Civ. P. 15(d) by augmenting his Original Complaint.

to state a claim and/or as frivolous.  (D.E. 12).  The undersigned ordered service on Defendants Garza, Martinez, Perales, and De Los Santos (collectively referred to herein has "Defendants").  (D.E. 13).

On March 23, 2017, Defendants Garza and Martinez filed their joint answer. (D.E. 15).  That same day, Defendants Garza, Martinez, and Perales filed a Partial Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6).  (D.E. 16).  On May 16, 2017, Defendant De Los Santos filed a Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6).  (D.E. 26).

On September 26, 2017, the undersigned issued a Memorandum and Recommendation (September 26, 2017 M&R), recommending that: (1) Defendants' Partial Motion to Dismiss (D.E. 16) and Motion to Dismiss (D.E. 16, 26) be granted in part and denied in part; (2) these motions be granted to the extent that Plaintiff's claims for money damages against Defendants in their official capacities be dismissed with prejudice as barred by the Eleventh Amendment; and (3) these motions be denied to the extent that Plaintiff has stated claims of deliberate indifference against Defendants Perales and De Los Santos.[3]  (D.E.  29).  On January 17, 2018, Senior District Judge Hilda G. Tagle adopted the February 6, 2017 M&R and the September 26, 2017 M&R. (D.E. 30).

On January 31, 2018, Defendants Perales and De Los Santos filed their answer. (D.E. 33).  On June 29, 2018, Defendants filed their motion for summary judgment.

---

[3]  Defendants did not seek the dismissal of Plaintiff's excessive force claims Defendants Garza and Martinez in either motion.

(D.E. 42).  Plaintiff subsequently filed his response to the summary judgment motion. (D.E. 43).

On September 17, 2018, because Defendants had failed to submit a Major Use of Force Video #M-043720716 (Exhibit B) as referenced in their summary judgment motion, the undersigned directed Defendants to submit same within ten days.  (D.E. 46). Defendants complied and submitted the exhibit into the Court's record.   (D.E. 49). Plaintiff subsequently filed a supplemental response containing additional exhibits.  (D.E. 50).

III.    **SUMMARY JUDGMENT EVIDENCE**

Defendants offer the following summary judgment evidence:

Exh. A:       Relevant Portions of Plaintiff's Grievances with Supporting Business Records Affidavit (D.E. 42-1).

Exh. B:       Major Use of Force Video (#M-0437207216) (D.E. 48).

Plaintiff, in turn, has attached the following summary judgment evidence to his responses: (1) relevant portions of Plaintiff's medical records (D.E. 43, pp. 3-16; D.E. 50, pp. 3-7); and (2) excerpts from Plaintiff's disciplinary proceeding (Case No. 20160338466).  Plaintiff's verified complaint and testimony at the *Spears* hearing also serve as competent summary judgment evidence.  *See Garrett v. Davis*, No. 2:14-CV-70, 2017 WL 1044969, at *3 (S.D. Tex. Mar. 20, 2017).   Accordingly, the competent summary judgment evidence establishes the following:

A.    **Plaintiff's Evidence**

(1)   ***Plaintiff's Verified Complaint and Spears Hearing Testimony***

Plaintiff has trouble walking due to a hip replacement surgery in 1998 that left him with permanent walking difficulties.   On July 7, 2016, after Plaintiff attended a disciplinary hearing, he was escorted back to his cell in administrative segregation by Officers Martinez and Garza.   Plaintiff was handcuffed when the officers began pulling Plaintiff in two opposite directions.   Defendants Martinez and Garza then slammed Plaintiff to the ground and forced his body, head, and lips into a concrete wall and floor. Defendant Garza grabbed Plaintiff's genitals in a vise-gripping manner and twisted his grip.   Defendant Martinez laughed while stating "fight for your gay rights."   Plaintiff states that as a result of the force used, he received a large knot near his forehead, inner split lips, a neck injury, further injury to his pre-existing lower hip condition, and injuries to his genitals.

Defendant Perales arrived at the scene of the incident immediately after it happened and watched as other officers helped Plaintiff off the ground and provided him with a walker.   After the assault, Felisha-Ana Antu, an LVN, saw Plaintiff cell-side. LVN Antu told the guard that Plaintiff needed to be seen in medical.   Nevertheless, Defendant Perales placed Plaintiff in his cell without allowing medical personnel to treat his injuries.   On the day after the assault occurred, Plaintiff informed Defendant De Los Santos that he had continuing pain in his lips, on his forehead, and throughout his body. Defendant De Los Santos proceeded to reject Plaintiff's request for medical assistance.

### (2)  Plaintiff's Medical Evidence

Plaintiff was seen by Dr. Isaac Kwarteng on July 12, 2016.  (D.E. 43, pp. 3-4). Plaintiff complained to Dr. Kwarteng that: (1) he was a handicapped patient due to

injuries and surgeries on his right hip; (2) prison officials slammed him to the ground on July 7, 2016, causing a split lower lip, injuries to his neck, and a knot on his forehead; (3) one of the officers proceeded to grab Plaintiff's genitalia and twisted it; and (4) it burns when Plaintiff tries to urinate. (D.E. 43, p. 3). While noting no acute distress, Dr. Kwarteng found that Plaintiff had tenderness to his right side, decreased range of motion, a laceration to the lower lip, and tenderness to his testicles and base of his penis. (D.E. 43, p. 3). Dr. Kwarteng prescribed Tylenol and ordered a cervical spine x-ray as well as urinalysis. (D.E. 43, p. 4).

Clinic notes dated August 19, 2016 reveal that Plaintiff's pain medication was changed to Prednisone and that he had no difficulty with urination. (D.E. 43, p. 5). Clinic notes dated September 6, 2016 reveal that Plaintiff complained primarily about right hip pain, which he had for a long time. (D.E. 43, p. 7). Plaintiff further informed Dr. Kwarteng that he had fallen in the shower on September 2, 2016. (D.E. 43, p. 7.). Further medical evidence presented by Plaintiff reflects additional treatment in 2017 and 2018 for his right hip issue. (D.E. 43, pp. 13, 15-16; D.E. 50, pp. 5).

B.   **Defendants' Evidence**

   *(1) Use of Force Video*

The Use of Force video begins on July 7, 2016, at 12:55 p.m. and lasts approximately thirteen minutes. The video first depicts Plaintiff lying face down on the ground next to a concrete wall surrounded by four prison officials. Two of the officials are Officer Martinez and Garza. Lt. Perales stood nearby along with an officer holding a hand-held camera. Lt. Perales verbally recited that: (1) Plaintiff was being escorted back

to his cell after appearing at a disciplinary hearing; (2) on the way back to his cell, Plaintiff failed to comply with two orders concerning his escort procedures and then attempted to assault officers; and (3) as a result, force was used to restrain Plaintiff.

The officers holding Plaintiff on the ground subsequently brought Plaintiff to his feet.   Plaintiff's arms were handcuffed behind his back, and leg restraints had been placed on him.   Officers Martinez and Garza proceeded to escort Plaintiff to his cell along with Lt. Perales who was directing the escort.   Plaintiff turned his head to the camera and revealed a bloody lower lip.   Plaintiff was returned to his cell where his leg restraints were removed by Officer Martinez.   After Plaintiff was locked in his cell, Officer Martinez removed Plaintiff's handcuffs.

Approximately one minute after Plaintiff was placed in the cell, Lt. Perales remarked that she was awaiting medical to examine Plaintiff.   Several minutes later, a nurse arrived to examine Plaintiff from outside his cell while Plaintiff was locked inside. After her examination, the nurse determined that Plaintiff only had an injury to his lip and would be taken to medical once it was determined he was no longer a security threat. The use of force video shows Lt. Perales standing outside Plaintiff's cell as she waited for a camera to take photographs of Plaintiff.   With Plaintiff locked in his cell, Lt. Perales took pictures of Plaintiff.

### *(2) Relevant Grievance and Disciplinary Records*

On July 11, 2016, Plaintiff filed a Step 1 grievance in Grievance No. 2016176692, complaining that: (1) Officers Martinez and Garza used excessive force on him in connection with the July 7, 2016 incident by slamming him into a concrete wall and

grabbing his genital area; and (2) Lt. Perales, Officer De Los Santos, and other officers denied him access to medical care.  (D.E. 42-1, pp. 5-6).

An investigation was undertaken with respect to Plaintiff's allegations.  (D.E. 42-1, pp. 7-16).  Plaintiff provided a statement describing the physical and sexual assault.  (D.E. 42-1, p. 14).  Officer Garza provided a statement refuting any claim that he grabbed Plaintiff by the genitals or witnesses any other official doing the same.  (D.E. 42-1, p. 14).  Officer Martinez likewise provided a statement indicating that he never observed Officer Garza grab Plaintiff by the genitals and did not himself make any sexually derogatory remarks to Plaintiff.  (D.E. 42-1, p. 14).  Lt. Perales provided a statement refuting any claim that any officer grabbed Plaintiff in an inappropriate manner and indicating that Plaintiff had never complained of someone grabbing him in a sexually inappropriate manner. (D.E. 42-1, p. 14).  Captain Christopher Pauley concluded in the Investigation Summary that all of Plaintiff's injuries received on July 7, 2016 were a result of the use of force but that the use of force was necessary to gain Plaintiff's compliance and to prevent him from injuring or assaulting staff.  (D.E. 42-1, p. 15).

Assistant Warden Putnam denied Plaintiff's Step 1 grievance on August 16, 2016, specifically noting that no evidence had been presented to substantiate his allegation of sexual contact.   (D.E. 42-1, p. 6).  Plaintiff's Step 2 grievance was denied on September 20, 2016.  (D.E. 42-1, p. 4).

Following the July 7, 2016 incident, Plaintiff was charged with failing to obey an order in Disciplinary Case No. 20160338466.  (D.E. 42-1, p. 23).  Specifically, Plaintiff was charged for failing to obey Officer Martinez's order to keep walking and otherwise

follow escort procedures.   (D.E. 42-1, pp. 30-31).   Plaintiff provided a statement explaining that he was handicapped with a right hip replacement.   (D.E. 42-1, p. 37). Plaintiff attested that Officers Martinez and Garza ignored his request to stop jerking him from side to side.   (D.E. 42-1, p. 37).   The officers body slammed him into a nearby concrete wall, and then Plaintiff was sexually assaulted.   (D.E. 42-1, p. 37).

Plaintiff appeared before a disciplinary hearing officer (DHO) on July 19, 2016, where he was found guilty of the charged offense.   (D.E. 42-1, p. 23).   On August 8, 2016, Plaintiff filed a Step 1 grievance to appeal the guilty finding and resulting punishment.   (D.E. 42-1, pp. 19-20).   Plaintiff's Step 1 grievance was denied on September 2, 2016.  (D.E. 42-1, p. 20).  Plaintiff's Step 2 grievance was likewise denied. (D.E. 42-1, p. 18).

## IV.   SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251-52.

In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion.  *Caboni v. Gen. Motors*

*Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).   The Court may not weigh the evidence or evaluate the credibility of witnesses.   *Id.*   Furthermore, affidavits or declarations "must be made on personal knowledge, [shall] set out facts that would be admissible in evidence, and [shall] show that the affiant or declarant is competent to testify to the matters stated." Fed. R. Civ. P. 56(c)(4); *see also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc*., 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions).   Unauthenticated and unverified documents do not constitute proper summary judgment evidence.   *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist.   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).   To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings.   Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S. at 248.   "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted."   *Caboni*, 278 F.3d at 451.   "If reasonable minds could differ as to the

import of the evidence ... a verdict should not be directed." *Anderson*, 477 U.S. at 250-51.

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. *See Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). When a government official has pled the defense of qualified immunity, the burden is on the plaintiff to establish that the official's conduct violated clearly established law. *Id.* Plaintiff cannot rest on his pleadings; instead, he must show a genuine issue of material fact concerning the reasonableness of the official's conduct. *Bazan v. Hidalgo County*, 46 F.3d 481, 490 (5th Cir. 2001).

## V.   DISCUSSION

Defendants contend they are entitled to qualified immunity with respect to Plaintiff's excessive force and deliberate indifference claims brought against them. The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc). To discharge this burden, the plaintiff must satisfy a two-prong test. *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 251-52 (5th Cir. 2005). First, he must claim that the defendants committed a

constitutional violation under current law.  *Id.* (citation omitted).  Second, he must claim that defendants' actions were objectively unreasonable in light of the law that was clearly established when the violation occurred.  *Id.; Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014).  While it will often be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was clearly established, that ordering of the analytical steps is no longer mandatory.  *Pearson*, 555 U.S. at 236 (receding from *Saucier v. Katz*, 533 U.S. 194 (2001)).

### A. Excessive Force

#### (1)   Step 1 – Constitutional Violation

Inmates have a constitutional right to be free from the use of excessive force.  *See Anthony v. Martinez,* 185 F. App'x 360, 363 (5th Cir. 2006).  To state an excessive force claim, a plaintiff must show that the force was not applied in a good-faith effort to maintain or restore discipline, but was applied maliciously and sadistically to cause harm, and that the injury he suffered was more than *de minimis* but not necessarily significant. *See Hudson v. McMillian*, 503 U.S. 1, 6-7, 10 (1992).  The five factors to be considered are: (1) the extent of the injury suffered; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any effort made to temper the severity of a forceful response.  *Gomez v. Chandler*, 163 F.3d 921, 923-24 (5th Cir. 1999) (citing *Hudson*, 962 F.3d at 523).

A prison official's "excessive physical force against a prisoner may constitute cruel and unusual punishment when the inmate does not suffer serious injury." *Hudson*, 503 U.S. at 4.  In *Wilkins v. Gaddy*, 559 U.S. 34 (2010), the Supreme Court ruled that a district court "erred in dismissing Wilkins' excessive force complaint based on the supposedly *de minimis* nature of his injuries." *Id.* at 40.  The Supreme Court explained that "the core judicial inquiry [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* at 37 (citations omitted).

 "[A]lthough a *de minimis* injury is not cognizable, the extent of injury necessary to satisfy the injury requirement is 'directly related to the amount of force that is constitutionally permissible under the circumstances.'" *Brown v. Lynch*, 524 F. App'x 69, 79 (5th Cir.  2013) (quoting *Ikerd v. Blair*, 101 F.3d 430, 434-35 (5th Cir. 1996)). *See also Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir. 2004)) (noting that the minimum qualifying injury "changes with the facts of each case"); *Williams v. Bramer,* 180 F.3d 699, 704 (5th Cir. 1999) ("What constitutes an injury in an excessive force claim is ... subjective -- it is defined entirely by the context in which the injury arises."). Courts, therefore, may look to the seriousness of the injury to determine "whether the use of force could plausibly have been thought necessary, or instead evinced such a wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

"[T]he amount of force used must be judged by the context in which the force was deployed." *Ikerd*, 101 F.3d at 434.   Prison guards and officials are afforded broad latitude to maintain order in the prison systems.   Courts have "long recognized the need for prison officials to maintain order and discipline, *Whitley*, 475 U.S. at 321-22, and "broad deference is given to such decisions." *Hudson*, 503 U.S. at 6.  *See also Bell v. Wolfish*, 441 U.S. 520, 547 (1979) ("prison administrators … should be accorded wide-ranging deference in the adoption and executions of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.").   Furthermore, prison guards work under circumstances where they "may [need] to act quickly and decisively." *Valencia v. Wiggins*, 981 F.2d 1440, 1446 (5th Cir. 1993).

Defendants have submitted competent summary evidence in an effort to show that the application of force on Plaintiff was necessary, that a proportional amount of force was used to gain Plaintiff's compliance, and that Plaintiff posed a threat to Officers Martinez and Garza which required the use of force.   First, Captain Christopher Pauley concluded in his investigation that the use of force applied by Officers Martinez and Garza on July 7, 2016 was necessary to gain Plaintiff's compliance and to prevent him from injuring or assaulting staff.   (D.E. 42-1, p. 15).   Officers Martinez and Garza provided statements in the context of an investigation to refute any claim that Officer Garza grabbed Plaintiff by the genitals or that Officer Martinez made sexually derogatory remarks to Plaintiff during the use of force.   (D.E. 42-1, p. 14).   Plaintiff's disciplinary

proceeding arising from this incident reflects that Plaintiff was found guilty of failing to obey Officer Martinez's orders to keep walking and otherwise follow escort procedures. (D.E. 42-1, pp. 30-31).

On the other hand, Plaintiff provided a statement as part of an investigation into his grievance describing the physical and sexual assault that occurred on July 7, 2016. (D.E. 42-1, p. 14).   The competent summary judgment presented further reflects that: (1) Plaintiff is a handicapped inmate with a right hip replacement; (2) while he was being escorted back to his cell, Officers Martinez and Garza ignored his request to stop jerking him from side to side; (3) the officers ignored his request and proceeded to body slam Plaintiff into a nearby concrete wall (D.E. 42-1, p. 37); and (4) Plaintiff was sexually assaulted by Officer Garza while Officer Martinez told Plaintiff to "fight for your gay rights."

Defendants have submitted into the record a Use of Force video.   While not showing Officers Martinez's and Garza's application of force on Plaintiff, the video picks up the action immediately afterwards with Plaintiff lying face down on the ground next to a concrete wall and restrained by four prison officials.   The video further reveals that Plaintiff suffered a bloody lip as a result of the altercation and was evaluated by a nurse soon thereafter.

In addition to suffering a visible bloody lip from an application of force, Plaintiff complained to Dr. Kwarteng on July 12, 2016, five days after the incident, that the actions of Officers Martinez and Garza caused injuries to his neck, back, and genital area. (D.E. 43, p. 3).   While noting no acute distress, Dr. Kwarteng found tenderness on

Plaintiff's right side, decreased range of motion, a laceration to the lower lip, and tenderness to Plaintiff's testicles and base penis.   (D.E. 43, p. 3).   Dr. Kwarteng prescribed Tylenol and ordered a cervical spine x-ray as well as urinalysis for Plaintiff. (D.E. 43, p. 4).  This evidence suggests that Plaintiff may have suffered more than *de minimis* injuries.  *Gomez,* 163 F.3d at 923 (recognizing that Courts may look to the objective medical evidence available in helping to determine whether an alleged injury is more than *de minimis*); *Luong v. Hatt,* 979 F. Supp. 481, 486 (N.D. Tex. 1997) (concluding that a "physical injury" in the context of excessive force "is an observable or diagnosable medical condition requiring treatment by a medical care professional").

Overall, when viewing the evidence in a light most favorable to Plaintiff, the competent summary judgment presented reveals fact issues as to whether Martinez and Garza applied force to Plaintiff maliciously and sadistically manner to cause harm and whether Plaintiff suffered more than a *de minimis* injury.   For purposes of the qualified immunity analysis, Officers Martinez and Garza are not entitled to summary judgment on the issue of whether Plaintiff has established an Eighth Amendment claim of excessive force against them.

### (2)  Step 2 – Objective Reasonableness

The issue for consideration with respect to the second step of the qualified immunity analysis is whether the actions of Officers Martinez and Garza were objectively unreasonable in light of clearly established law at the time of the conduct in question. *Short v. West*, 662 F.3d 320, 325 (5th Cir. 2011) (citations omitted).  "To be clearly established for purposes of qualified immunity, the contours of the right must be

sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citations omitted).

As discussed above, the law is clearly established that a convicted prisoner can demonstrate an Eighth Amendment excessive force claims by showing that: (1) the force was not applied in a good-faith effort to maintain or restore discipline but was instead applied maliciously and sadistically to cause harm; and (2) that the injury suffered was more than *de minimis* but not necessarily significant. *See Hudson*, 503 U.S. at 6-7, 10; *Gomez*, 163 F.3d at 923. Based on the competent summary judgment evidence presented, fact issues exist as to whether the actions of Officers Martinez and Garza were objectively reasonable.

Accordingly, it is respectfully recommended that Officers Martinez and Garza are not entitled to qualified immunity and that the summary judgment motion be denied as to Plaintiff's excessive force claims against these two defendants.

## B. Deliberate Indifference

### (1) Step 1 – Constitutional Violation

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. Prison officials are required to provide humane conditions of confinement and to ensure that inmates receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A prison official violates this prohibition against cruel and unusual punishment when his actions show deliberate indifference to a prisoner's serious medical needs. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006).

An inmate can demonstrate deliberate indifference if a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.   A prison inmate also demonstrates deliberate indifference by showing that "a prison official 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).   A "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference [that] *results in substantial harm*." *Easter*, 467 F.3d at 464 (emphasis in original).

Lt. Perales and Officer De Los Santos contend that Plaintiff has presented no evidence to indicate they acted with deliberate indifference to Plaintiff's medical needs. (D.E. 42, p. 12).  Plaintiff maintains that Lt. Perales and Officer De Los Santos refused Plaintiff access to medical treatment following the July 7, 2016 incident.  (D.E. 43, p. 2).

Plaintiff alleged in his complaint and testified at the *Spears* hearing that: (1) on July 7, 2016, Lt. Perales watched as other officers helped Plaintiff off the ground near the concrete wall; (2) Lt. Perales proceeded to deny Plaintiff access to medical care despite knowing Plaintiff had suffered both visible and nonvisible injuries to his lips, head, neck, back, genitals, and hip; (3) Officer De Los Santos knew of the assault and witnessed visible injuries to Plaintiff's head and lips; and (4) on the day following the assault,

Officer De Los Santos rejected Plaintiff's request to be seen by medical despite being informed that he had continuing pain in his lips, on his forehead, and throughout his body.

While it is true that Plaintiff's sworn complaint and testimony at the *Spears* hearing are competent summary judgment evidence, the Fifth Circuit has held that a non-movant cannot satisfy his summary judgment burden with "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Hathaway v. Bazany,* 507 F.3d 312, 319 (5th Cir. 2007).   Plaintiff has come forward with no evidence in his responses to the summary judgment motion to establish that either Lt. Perales or Officer De Los Santos purposefully denied him medical care or otherwise acted with deliberate indifference with respect to Plaintiff medical issues.

A review of the Use of Force video shows that: (1) approximately one minute after Plaintiff was placed in the cell, Lt. Perales remarked that she was awaiting medical to examine Plaintiff; (2) several minutes later, a nurse arrived to examine Plaintiff from outside his cell while Plaintiff was locked inside; (3) after her examination, the nurse determined that Plaintiff only had an injury to his lip and would be taken to medical once it was determined he was no longer a security threat.   Lt. Perales did not engage in any conduct to deny Plaintiff the opportunity to be evaluated by a nurse immediately after he was injured on July 7, 2016.

Furthermore, Plaintiff acknowledges that he was seen within a few days of July 7, 2016 by a doctor, who examined his injuries suffered in connection with his altercation with Officers Martinez and Garza.  (D.E. 43, p. 2).  The uncontroverted objective medical

19 / 22

evidence establishes that Plaintiff was seen by Dr. Isaac Kwarteng on July 12, 2016, and that, while noting no acute distress, Dr. Kwarteng prescribed Tylenol for Plaintiff and ordered a cervical spine x-ray as well as urinalysis.  (D.E. 43, p. 4).  Clinic notes dated August 19, 2016 reveal that Plaintiff's pain medication was changed to Prednisone and that Plaintiff had no difficulty with urination.  (D.E. 43, p. 5).  This medical evidence reflects that Plaintiff received medical care for all of his injury concerns following the July 7, 2016 incident and that any delay in receiving care did not result in an exacerbation of these injuries.  Thus, even assuming that either Lt. Perales or Officer De Los Santos acted in any fashion to delay medical treatment for Plaintiff, the competent summary judgment evidence presented fails to demonstrate that any such delay resulted in substantial harm to Plaintiff.  *See Easter*, 467 F.3d at 464.  *See also McDonald v. City of Dallas*, No. 3:16-CV-2354, 2016 WL 7839342, at *3 (N.D. Tex. Dec. 19, 2016) (dismissing prisoner's deliberate indifference claim because he alleged no facts suggesting that the delay in receiving medical care immediately following an arrest had resulted in substantial harm).

Accordingly, even when taking as true the evidence in a light most favorable to Plaintiff, the uncontroverted summary judgment evidence demonstrates that Plaintiff has failed to state an Eighth Amendment claim of deliberate indifference against Defendants Perales and De Los Santos.

### B.      *Step 2 – Objective reasonableness*

Because Plaintiff has failed to state a constitutional violation as to the Defendants Perales and De Los Santos sued in their individual capacities, it is unnecessary to

examine whether their actions were reasonable.  *See Saucier*, 533 U.S. at 201 (if the facts alleged do not establish that the officer's conduct violated a constitutional right, then the qualified immunity analysis need proceed no further and qualified immunity is appropriate).  Thus, it is respectfully recommended that Defendants Perales and De Los Santos be granted summary judgment in their favor as to Plaintiff's deliberate indifference claims and that such claims be dismissed with prejudice.

## VI.    RECOMMENDATION.

For the foregoing reasons, it is respectfully recommended that Defendants' Motion for Summary Judgment (D.E. 42) be GRANTED in part and DENIED in part.  The undersigned, therefore, RECOMMENDS that Defendants' summary judgment motion be GRANTED with respect to Plaintiff's deliberate indifference claims against Defendants Perales and De Los Santos because they are entitled to qualified immunity as a matter of law on these claims.  The undersigned further RECOMMENDS that Defendants' summary judgment motion be DENIED with respect to Plaintiff's excessive force claims against Defendants Martinez and Garza.  Plaintiff, therefore, should be allowed to proceed to trial on his excessive force claims against Defendants Martinez and Garza.

Respectfully submitted this 18th day of November, 2018.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).